**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **(1) DUSTIN J. DENUNZIO,** | )   **Criminal No:  14-CR-10284-NMG** |
| **(2) ANTHONY GATTINERI, and** | ) |
| **(3) CHARLES A. LIGHTBODY,** | )   **ORAL ARGUMENT REQUESTED** |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM OF LAW**
**IN SUPPORT OF DUSTIN DENUNZIO'S AND ANTHONY GATTINERI'S**
**MOTION TO DISMISS COUNTS ONE AND TWO OF THE INDICTMENT**

The Government premises this case on the theory that Defendants Dustin J. DeNunzio

("DeNunzio"), Anthony Gattineri ("Gattineri") and Charles A. Lightbody ("Lightbody")

(collectively, the "Defendants") concealed the "material" fact that Lightbody held a 12.5%

equity interest in FBT Everett Realty LLC, which owned a piece of land in Everett,

Massachusetts ("the Everett Parcel") on which Wynn Resorts Limited ("Wynn") desired to

develop and operate a destination resort casino.  The Indictment alleges that the Defendants

concealed Lightbody's ownership interest in the Everett Parcel from Wynn and the

Massachusetts Gaming Commission ("Gaming Commission") in order to obtain money from

Wynn "in exchange for the Everett Parcel."  Indictment, ¶ 15.

This motion to dismiss addresses the Government's theory that Defendants concealed

material information from Wynn, in violation of the federal wire fraud statute.  As more fully set

forth below, the allegations in the Indictment are insufficient to convict Defendants under that

theory.  First, accepting all of the allegations in the Indictment as true,[1] there is *no allegation* in

---

[1] At this stage, the Court "must accept the allegations in the indictment as true."  United States v. Young, 694 F.
Supp. 2d 25, 27 (D. Me. 2010) (citation omitted).

the Indictment that, prior to Wynn and FBT entering the option agreement to purchase the Everett Parcel, Defendants made any representation whatsoever to Wynn about whether Lightbody held any ownership interest in the Everett Parcel or FBT.  Nor does the Indictment allege that Defendants made any representations whatsoever to Wynn about whether any of the owners of FBT or the Everett Parcel had a criminal record.  Second, even assuming that Wynn's intention was to do "due diligence" on the personal backgrounds of FBT's equity holders between signing the option agreement and exercising its option to purchase the Everett Parcel, the Indictment fails to allege that Lightbody's supposed continuing equity interest in FBT impaired, for purposes of the wire fraud statute, the physical piece of land that Wynn intended to purchase if and only if it was awarded the Region A casino license.

Without such allegations, the Indictment is insufficient on its face to set forth a cognizable scheme to defraud Wynn in violation of the wire fraud statute.  Counts One and Two of the Indictment should therefore be dismissed.[2]  See United States v. Flores, 404 F.3d 320, 325-26 (5th Cir. 2005) (holding that, where undisputed facts demonstrate that the prosecution will not be able to prove all elements of the charged offense, a district court may dismiss the charge prior to trial); United States v. Hall, 20 F.3d 1084, 1088 (10th Cir. 1994) (same).

## RELEVANT BACKGROUND

### I.      Wynn's Land Deal with FBT

This case arises out of a real estate transaction between Wynn, a publicly-traded casino company, and a local real estate holding company called FBT Everett Realty LLC ("FBT").  In October 2009, FBT purchased the Everett Parcel, a 33-acre parcel of land in Everett,

---

[2] Mr. DeNunzio and Mr. Gattineri have filed a separate and distinct motion to dismiss Count One and Count Two to the extent they are based on the theory that Defendants made a material misrepresentation *to the Gaming Commission* in order to obtain money from Wynn in exchange for the Everett Parcel.  The outcome of that motion does not depend on the outcome of this motion.

2

Massachusetts.  In 2011, the Commonwealth of Massachusetts passed the "Expanded Gaming Act" (the "Gaming Act" or the "Act"), legalizing casino gaming on non-tribal land in Massachusetts.  Soon after the Act's passage, Wynn publicly began preparations to submit an application for the one available "Region A" license that would be issued pursuant to the Act, including exploring potential sites for its proposed casino resort.

In October 2012, Wynn approached FBT to discuss the possibility of acquiring the Everett Parcel, and Wynn and FBT signed a non-binding memorandum of understanding regarding the Everett Parcel in November 2012.  On December 19, 2012, Wynn and FBT entered into an option agreement pursuant to which Wynn acquired an option to purchase the Everett Parcel at a net price of $65 million.  It was understood by the parties, and indeed memorialized in the option agreement, that Wynn would exercise this option, if at all, only in the event that the Gaming Commission awarded Wynn the Region A license.

On January 14, 2013, Wynn submitted its application to the Gaming Commission for the Region A license, along with a $400,000 non-refundable license fee.

On January 17, 2013, one month after Wynn entered into the option agreement and three days after submitting its license application, Defendant DeNunzio sent an email to Wynn's General Counsel, with the subject "Equity Holders in FBT – Everett, MA," identifying himself, Gattineri, and a local real estate developer named Paul Lohnes ("Lohnes") as "the three people who have interest in FBT Everett Realty LLC."  See Indictment, at ¶ 47.  (The Government's major premise, it appears, is that Mr. DeNunzio's representation was false.)

In July 2013, during voluntary interviews conducted by Gaming Commission officials, DeNunzio, Gattineri and Lightbody advised the Gaming Commission that, although Lightbody at one time held a 12.5% equity interest in FBT, Lightbody had agreed prior to the execution of the

option agreement with Wynn to relinquish his equity to Gattineri in exchange for fair value. Lightbody was previously convicted of a felony.

On October 1, 2014, the Defendants were indicted by a federal grand jury and charged with one count of conspiracy to commit wire fraud and one count of wire fraud.  Each count is premised on the allegation that Lightbody had "retained a financial interest in the Everett Parcel" and/or "in FBT," which the Defendants purportedly "conceal[ed] from Wynn and the [Gaming Commission], in order to obtain money from Wynn for the Everett Parcel."  Indictment, ¶¶ 15-17, 19; see also id. at ¶ 46 (incorporating the conspiracy allegations into the wire fraud count).

In November 2014, over a month after the Indictment was issued, the Gaming Commission awarded Wynn the Region A casino license.[3]  On January 2, 2015, more than three months after having notice of the alleged undisclosed interest of Lightbody in FBT, Wynn exercised its option to purchase the Everett Parcel in fee simple from FBT.  Wynn has owned the Everett Parcel since that day and is presently developing the land as a resort casino.

There is no allegation in the Indictment that either FBT or any of the Defendants has a financial interest in the gaming establishment that Wynn is developing on the Everett Parcel. Moreover, there are no allegations that FBT or any of the Defendants will be involved in any aspect of the business operations of the casino being developed on the Everett Parcel.

---

[3] The Massachusetts Expanded Gaming Act, M.G.L. c. 23K § 1 et seq., sets forth various suitability and licensing requirements for applicants who seek gaming licenses from the Gaming Commission.  Under the statute, a gaming license may not be awarded to an applicant if the **applicant** or its **"affiliates or close associates"** has (1) "been convicted of a felony or other crime involving embezzlement, theft, fraud or perjury."  See M.G.L. c. 23K §§ 16(a)(i), 16(a)(ii) (emphasis added). The Gaming Act defines "**affiliate**" as "a person who directly or indirectly controls, or is controlled by, or is under common control with, [the applicant]," see M.G.L. c. 23K § 2, and it defines **"close associate"** as "a person who holds a relevant financial interest in, or is entitled to exercise power in, the business of an applicant or licensee and, by virtue of that interest or power, is able to exercise a significant influence over the management or operation of a gaming establishment or business licensed [under Chapter 23K]."  Id.  The Gaming Act also requires anyone with "**a financial interest in the gaming establishment, or with a financial interest in the business of the gaming licensee or applicant for a gaming license,**" to be qualified for licensure [in accordance with Chapter 23K]."  See M.G.L. c. 23K, § 14(a) (emphasis added).  The Indictment does not allege (nor could it plausibly allege) that FBT or any of Defendants were "affiliates" of, "close associates" of, or held a "financial interest" in Wynn Resorts Limited or Wynn's gaming establishment.

## II.     The Conspiracy and Wire Fraud Charges

Counts One and Two of the Indictment are both premised on the allegation that the Defendants "concealed" a single, discrete fact -- i.e., that Lightbody (who has a felony conviction) "retained a financial interest in the Everett Parcel" and/or "in FBT" -- from Wynn, on the one hand, and the Gaming Commission, on the other, for the same pecuniary purpose -- i.e., "to obtain money from Wynn [in exchange] for the Everett Parcel."  See, e.g., Indictment, ¶ 15 (describing the object of the conspiracy) and ¶ 46 (incorporating Paragraph 15 into the substantive wire fraud charge).  Each count sets forth two distinct theories of wire fraud.  The first theory -- and the one that is the focus of this memorandum -- is that the Defendants conspired to conceal Lightbody's "financial interest" in the Everett Parcel and/or in FBT *from Wynn* in order to obtain money from Wynn in exchange for the Everett Parcel.[4]  Indictment, ¶ 15. As further explained below, the flaw in this wire fraud theory is that the Indictment does not identify any alleged misrepresentation concerning an essential element of the bargain between the Defendants and Wynn, or any intended or actual harm to Wynn -- that is, intended or actual *deprivation* of money or property.  In the simplest possible terms, Wynn got exactly what it contracted for.  Wynn (1) had an option to purchase the Everett Parcel if it received the Region A casino license, (2) received the Region A casino license, and (3) with that license in hand, purchased the Everett Parcel in fee simple so that it could begin developing it into a lucrative casino resort.  Counts One and Two of the Indictment should therefore be dismissed.

---

[4] A second theory embodied in Counts One and Two is that the Defendants conspired to conceal Lightbody's financial interest in the Everett Parcel and/or in FBT from the Gaming Commission to induce the Gaming Commission to award Wynn the Region A casino license.  The Defendants have filed a separate partial motion to dismiss Counts One and Two on the ground that this second theory of criminality is legally invalid under the Supreme Court's decision in Cleveland v. United States, 531 U.S. 12 (2000), and the First Circuit's decision in United States v. Christopher, 142 F.3d 46 (1st Cir. 1998).  See ECF Nos. 143 and 144.

## APPLICABLE LAW

The "essential elements of a mail or wire fraud violation are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." Fountain v. United States, 357 F.3d 250, 255 (2d Cir. 2004), cert. denied, 544 U.S. 1017 (2005) (quotation marks, citation, and brackets omitted).  In the context of mail and wire fraud, "the words 'to defraud' commonly refer 'to wronging one in his property rights by dishonest methods or schemes,' and 'usually signify the deprivation of something of value by trick, deceit, chicane or overreaching,'" McNally v. United States, 483 U.S. 350, 358 (quoting Hammerschmidt v. United States, 265 U.S. 182, 188 (1924)).  To show a scheme to defraud, the government must present proof that the defendants possessed a fraudulent intent.  United States v. Starr, 816 F.2d 94, 98 (2d Cir. 1987).  The Government, of course, need not prove that the intended victim of the fraud was *actually* harmed; it is enough to show the defendant contemplated harm to the victim.  Nevertheless, the law is clear that the prosecution cannot satisfy its burden of showing an intent to *harm* the victim merely by showing that the defendant intended to *deceive* the victim.  See United States v. Regent Office Supply Co., 421 F.2d 1174, 1180-81 (2d Cir. 1970).  Moreover, to set forth a viable mail or wire fraud scheme, the misrepresentation made with the intent to defraud must also be "material."  United States v. Appolon, 715 F.3d 362, 367 (1st Cir. 2013) (citing Neder v. United States, 527 U.S. 1, 25 (1999)).  In this context, the term "material" means that the misrepresentation has "'a natural tendency to influence, or is capable of influencing, the decision' of the person or persons it is addressed to."  United States v. DiRosa, 761 F.3d 144, 151 (1st Cir. 2014) (citing Mendez Internet Mgmt. Servs., Inc. v. Banco Santander de Puerto Rico, 621 F.3d 10, 15 (1st Cir. 2010)).

**ARGUMENT**

**I.    THE INDICTMENT FAILS TO SET FORTH A SCHEME TO DEFRAUD WYNN IN CONNECTION WITH WYNN'S PURCHASE OF THE EVERETT PARCEL**

**A.    The Indictment Does Not Identify Any Legally Cognizable Harm to Wynn**

The Indictment fails to set forth a viable scheme to defraud Wynn premised on the

Defendants' alleged misrepresentation to Wynn (i.e., the Defendants' failure to disclose

Lightbody's purported financial interest in the Everett Parcel), because the Indictment does not

identify any intent to harm Wynn with respect to its purchase of the Everett Parcel.  The law is

settled that misrepresentations that do not go to the nature of the bargain will not support mail

and wire fraud charges.  See, e.g., Regent Office Supply, 421 F.2d at 1182 (holding that an intent

to deceive does not equate with an intent to defraud that will support a wire fraud charge where

the deceit did not go to the nature of the bargain itself).  Rather, to support a wire fraud charge,

the "deceit practiced must be related to the contemplated harm, and that harm must be found to

reside in the bargain sought to be struck."  United States v. Kurtz, 2008 U.S. Dist. LEXIS 32674,

at *4 (W.D.N.Y. April 21, 2008) (citing Regent Office Supply, 421 F.2d at 1182 (reversing mail

fraud conviction where the misrepresentation was "not directed to the quality, adequacy or price

of goods to be sold, or otherwise to the nature of the bargain."); see also Starr, 816 F.2d at 98-99

(reversing wire fraud conviction where alleged victims "received exactly what they paid for" and

"there was no discrepancy between benefits reasonably anticipated and actual benefits received"

(internal quotation marks and citation are omitted)).  The Indictment in the instant case is

deficient because it fails to allege that the Defendants' purported misrepresentation to Wynn

created a material discrepancy between what Wynn reasonably expected to receive when it

purchased the Everett Parcel and what it actually received.  A wire fraud charge cannot stand in

the face of such allegations.  See Regent Office Supply, 421 F.2d at 1182; United States v.

Shellef, 507 F.3d 82, 108 (2nd Cir. 2007).

In Regent Office Supply, for example, the defendants' scheme consisted of directing their

sales personnel to misrepresent their identities to prospective customers so that the customers

would be willing to entertain their offers.  421 F.2d at 1176.  While the defendants made false

representations to gain access to potential customers' purchasing agents, they did not lie about

the quality of their merchandise.  Id. at 1182.  The court concluded that no conviction under the

mail fraud statute could stand because the misrepresentation was "not directed to the quality,

adequacy or price of goods to be sold, or otherwise to the nature of the bargain."  Id. at 1179.

The court explained:

> Although proof that the injury was accomplished is not required to convict under [the
> wire fraud statute], we believe the statute does require evidence from which it may be
> inferred that some actual injury to the victim, however slight, is a reasonably probable
> result of the deceitful representations if they are successful.

Id. at 1182, citing Horman v. United States, 116 F. 350, 352 (6th Cir. 1902).

The Second Circuit reached a similar conclusion in United States v. Shellef, 507 F.3d 82.

In Shellef, the defendant was charged with wire fraud, among other things, in connection with

misrepresenting to the manufacturer of a regulated solvent that he was purchasing the solvent for

resale overseas and, thus, was not subject to excise taxes.  Instead, however, he sold the solvent

domestically.  The indictment alleged that the defendant's misrepresentations that he would sell

the solvent overseas induced the manufacturer to sell solvent to him that the manufacturer would

not have sold had it known that the buyer actually intended to sell it domestically.  The Second

Circuit reversed the defendant's wire fraud conviction, holding that the indictment was

insufficient because it failed to allege that Shellef misrepresented "the nature of the bargain" or

that there was a "discrepancy between benefits reasonably anticipated" and actual benefits received.  Id. at 109.  The court explained:

> Our cases have drawn a fine line between schemes that do no more than cause their victims to enter into transactions they would otherwise avoid -- which do not violate the mail or wire fraud statutes -- and schemes that depend for their completion on a misrepresentation of an essential element of the bargain -- which do violate the mail and wire fraud statutes."

 Id. at 108.  The court concluded that the Indictment was legally insufficient because it failed to allege that the misrepresentation had "relevance to the object of the contract" and, instead, only alleged that the misrepresentation induced the manufacturer to enter into a transaction it would otherwise have avoided.  Id. at 108-109.

Comparing Shellef and Regent Office Supply to the instant case underscores that Defendants' purported misrepresentation to Wynn does not implicate the wire fraud statute because it does not go to the essential nature of the bargain, which is that Wynn would purchase the Everett Parcel from FBT in fee simple if it received the Region A casino license.  Defendants did not sell Wynn a 30-acre parcel of land after representing that the land consisted of 33 acres. Nor did the Defendants claim the land was unencumbered when, in fact, it was encumbered. There is simply nothing about the ownership composition of FBT that can reasonably be said to have been capable of affecting the essential nature of the transaction between FBT and Wynn, or diminishing the value of what Wynn bargained for.

It is not enough for purposes of a wire fraud charge that the Indictment identifies a lie or the intent to deceive the victim, even assuming that the commercial transaction would not have occurred but for that deceit.  Rather, the deception practiced must affect the nature of the bargain and be capable of causing harm to the alleged victim in order to support a wire fraud charge.  See Regent Office Supply, 421 F.2d at 1182 (intent to deceive did not equate with legally sufficient

"intent to defraud" where deceit did not go to the nature of the bargain itself); <u>Shellef</u>, 507 F.3d at 109 (Indictment insufficient where it failed to allege that there was a "discrepancy between the benefits reasonably anticipated" and the "actual benefits received.")  Counts One and Two of the Indictment should be dismissed to the extent that they purport to set forth a scheme to defraud Wynn of money in connection with the Everett Parcel.

**B.    The Defendants' Alleged Misrepresentation to Wynn Was Immaterial as a Matter of Law**

Counts One and Two of the Indictment also fail to set forth a viable scheme to defraud Wynn because the so-called "material fact" that the Defendants concealed from Wynn (i.e., Lightbody's alleged ownership interest the Everett Parcel) could not have influenced Wynn's decision to purchase the Everett Parcel.  <u>See</u> <u>United States v. Causey</u>, 2005 U.S. Dist. LEXIS 48841 *9 (S.D. Texas October 17, 2005) (stating that "if the alleged misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality [it is] appropriate for the district court to rule that the allegations are inactionable as a matter of law") (quoting <u>Kapps v. Torch Offshore, Inc.</u>, 379 F.3d 207, 216 (5th Cir. 2004)); <u>United States v. DiRosa</u>, 761 F.3d 144, 151 (1st Cir. 2014) ("The misrepresentations made with the intent to defraud must be material, which we have described as having "a natural tendency to influence, or is capable of influencing, the decision" of the person or persons it is addressed to.")

Consider the following undisputed facts:

- Wynn approached FBT in October 2012 about purchasing the Everett Parcel as a site for a future casino.

- In November 2012, Wynn and FBT signed a non-binding memorandum of understanding that contemplated using the Everett Parcel for the site of a future casino.

- On December 19, 2012, Wynn entered into an option agreement with FBT that gave Wynn an option to purchase the Everett Parcel in fee simple in the event the Gaming Commission awarded Wynn the Region A license to develop and operate a casino.

- On January 17, 2012, Defendant DeNunzio sent an email to Wynn's General Counsel, with the subject "Equity Holders in FBT – Everett, MA," identifying himself, Gattineri and Lohnes as "the three people who have interest in FBT Everett Realty LLC."

- On October 1, 2014, this Indictment was issued, thus putting Wynn (and the Gaming Commission) on notice of the allegation that Mr. Lightbody held an undisclosed interest in FBT and that Defendants had misrepresented that fact to Wynn.

- On November 6, 2014, the Gaming Commission awarded Wynn the Region A license to develop and operate a casino.

- On January 2, 2015, Wynn exercised its option to purchase the Everett Parcel from FBT.

- Wynn is presently developing a casino on the Everett Parcel.

As is apparent from these undisputed facts, the sole reason why Wynn contemplated purchasing, and ultimately did purchase, the Everett Parcel was in order to develop a destination resort casino on that site. Wynn decided to proceed with the pursuit of the casino license based on its application disclosing the use of the Everett Parcel after the Indictment in this case was issued. Thus, whether or not Lightbody held an interest in FBT quite obviously had no bearing whatsoever on whether Wynn would purchase the Everett Parcel. Instead, what mattered to Wynn is whether it received the Region A casino license. As such, any alleged misrepresentation to Wynn as to Lightbody's ownership interest in the Everett Parcel could not form the basis for a wire fraud charge because it did not go to the nature of what Wynn purchased from FBT on January 2, 2015 any more so than the salesperson's misrepresentations went to the nature of the office supply products in <u>Regent Office Supply</u>. At best, the Defendants' alleged misrepresentation to Wynn was collateral to the nature of the bargain, which

does not support a violation of the wire fraud statute.  See <u>Shellef</u>, 507 F.3d at 109 (reversing wire fraud conviction where Indictment failed to allege a "discrepancy between benefits reasonably anticipated" and "actual benefits received."); <u>United States v. Kurtz</u>, 2008 U.S. Dist. LEXIS 32674 (W.D.N.Y. Apr. 21, 2008) (granting defendant's motion to dismiss indictment and concluding that mail/wire fraud charges cannot apply to situations where the alleged victims "received exactly what they paid for" and "there was no discrepancy between benefits reasonably anticipated and actual benefits received" (internal quotation marks and citation omitted)).

## CONCLUSION

For the forgoing reasons, Defendants Dustin DeNunzio and Anthony Gattineri request that this Court dismiss Count One and Count Two of the Indictment.

Respectfully submitted,

/s/ Laura B. Angelini
Michael J. Connolly (BBO #638611)
Laura B. Angelini (BBO #658647)
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
Phone: (617) 345-9000
Fax: (617) 345-9020
mconnolly@hinckleyallen.com
langelini@hinckleyallen.com

*Attorneys for Anthony Gattineri*

_/s/ Aaron M. Katz_____
Joshua S. Levy (BBO #563017)
Aaron M. Katz (BBO #662457)
Ropes & Gray LLP
Prudential Center
800 Boylston St.
Boston, MA 02199
Phone: (617) 951-7000
Fax: (603) 951-7050
Joshua.Levy@ropesgray.com
Aaron.Katz@ropesgray.com

*Attorneys for Dustin DeNunzio*

Dated: May 26, 2015

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1, I hereby certify that counsel for the Defendants have in good faith attempted to confer with counsel for the Government to resolve or narrow the issues presented by this motion, and that the disputed issues remain unresolved.

/s/ Laura B. Angelini_____

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Laura B. Angelini_____

13