# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA              . CRIMINAL NO. 14-10284-NMG
                                      .
            V.                        . BOSTON, MASSACHUSETTS
                                      . JULY 29, 2015
                                      .
JUSTIN DENUNZIO, CHARLES LIGHTBODY.
   ANTHONY GATTINERI                  .
      Defendants                      .
. . . . . . . . . . . . . . . . .

                   TRANSCRIPT OF MOTION HEARING
           BEFORE THE HONORABLE MARIANNE B. BOWLER
                UNITED STATES MAGISTRATE JUDGE
APPEARANCES:

UNITED STATES ATTORNEY'S OFFICE
Kristina Barclay, Esq.
One Courthouse Way, Suite 9200
Boston, MA  02210
617-748-3371
Kristina.barclay@usdoj.gov


For Defendant Anthony Gattineri

HINCKLEY, ALLEN AND SNYDER, LLP
Michael Connolly, Esq.
Laura Angelini, Esq.
28 State Street
Boston, MA  02109
617-345-9000 Ext. 4598
mconnolly@hinckleyallen.com


For Defendant Dustin DeNunzio

ROPES & GRAY LLP
Joshua Levy, Esq.
Aaron Katz, Esq.
Prudential Tower
800 Boylston Street
Boston, MA  02199-3600
617-951-7281
jlevy@ropesgray.com

For Defendant Charles A. Lightbody

RANKIN & SULTAN
Charles Rankin, Esq.
151 Merrimac Street, Second Floor
Boston, MA  02114-4717
cranki@rankin-sultan.com

Court Reporter:

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

*MARYANN V. YOUNG*
**Certified Court Transcriber**
**Wrentham, MA  02093**
**(508) 384-2003**

3

1    (Case called into session)

2    (3:16:00 PM)

3             THE CLERK:  The Court in the District of

4    Massachusetts is now in session.  The Honorable Marianne

5    B. Bowler presiding.  Today is Wednesday, July 29, 2015.

6    The case USA v. DeNunzio et al, Criminal Action No. 14-

7    10284 will now be heard.

8             Would counsel please identify themselves for the

9    record?

10            MS. BARCLAY:  Good afternoon, Your Honor,

11   Kristina Barclay for the United States.

12            THE COURT:  Thank you very much.

13            MR. CONNOLLY:  Good afternoon, Your Honor,

14   Michael Connolly and Laura Angelini for Anthony Gattineri.

15            THE COURT:  Thank you.

16            MR. LEVY:  Good afternoon, Your Honor, Joshua

17   Levy and Aaron Katz for Dustin DeNunzio.

18            THE COURT:  Thank you.

19            MR. RANKIN:  Good afternoon, Your Honor, Charles

20   Rankin for Mr. Lightbody.

21            THE COURT:  Thank you very much.  Well, we're

22   here for a hearing on Docket Entry No. 168.  It's my

23   understanding that counsel inquired of the clerk as to

24   whether or not this would be an evidentiary hearing and

25   that they receive notice electronically yesterday that

4

1  this would be a motion hearing as opposed to an

2  evidentiary hearing.  So I'm ready to hear argument.

3          MR. CONNOLLY:  Thank you, Your Honor.  Your

4  Honor, I prepared a binder of exhibits that I'd like to

5  refer the Court to in the course of my argument to the

6  Court.  I've given a copy to Assistant U.S. Attorney

7  Barclay.  I'd like permission to submit a copy of the

8  binder to the Court?

9          THE COURT:  The government have any objection?

10         MS. BARCLAY:  No, Your Honor.

11         THE COURT:  All right.

12         MR. CONNOLLY:  So Your Honor, as the Court is

13 aware this case involves fraud charges against the three

14 defendants, wire fraud count and a conspiracy to commit

15 wire fraud count, and at the essence of the factual basis

16 for the indictment is the allegation that the defendants

17 concealed a hidden ownership interest of Charles Lightbody

18 who's a convicted felon and a partnership known as FBT

19 Everett Realty LLC that own property in Everett, and the

20 allegation is that the facts were concealed from two

21 victims, the Massachusetts Gaming Commission and Wynn.

22 Wynn Resorts LLC.

23         Now the defendants deny that Mr. Lightbody had

24 any continuing ownership in FBT after December of 2012

25 which was the date when Wynn entered into an option

5

1  agreement with FBT to purchase the real estate and, but

2  one of the issues aside from that denial is whether or not

3  the defendants made any misrepresentations to Wynn that

4  were material, that were important enough to the Wynn

5  organization such that it would have turned away from the

6  deal had it known that information.

7      Now this motion concerns allegations that two

8  private investigators engaged by ML Strategies which was

9  engaged by Wynn in this case, were granted access to a

10  secure area at the Attorney General's Office, One

11  Ashburton Place on the fourth floor.  As we understand it,

12  the fourth floor is not a public area where there's a

13  lobby.  There's a hallway and there are as I understand

14  it, two entry ways into space leased by the Attorney

15  General's Office, both of which require key card access.

16  Now the information that came to light in connection with

17  a pending lawsuit brought by the City of Boston against

18  the gaming commission is that two private investigators,

19  both former Mass State Police officers by the name of

20  Stephen Matthews and Joseph Flaherty, were granted access

21  to this secured area which is used in part as we

22  understand it for receiving and storing electronically

23  intercepted information and other confidential information

24  about ongoing criminal investigations.

25      Now as we understand, initially we learned that

6

1   these two investigators were granted access in or around

2   October of 2013 which was shortly after the IEB began

3   investigating whether or not Mr. Lightbody had an interest

4   in the Everett property.  We understand from affidavits

5   submitted by the government in opposition to our motion

6   that the two private investigators deny having had access

7   to this secured area at the Attorney General's Office in

8   October of 2013 but acknowledge having access to that

9   facility in March or April of 2014.  However, importantly

10  they deny that their work at that time, March and April of

11  2014, had anything to do with Wynn or anything to do with

12  the criminal investigation which led to the indictments of

13  the three defendants here.  Now interestingly after those

14  allegations were made public in connection with the civil

15  case pending in Suffolk Superior Court involving the City

16  of Boston, Wynn issued a categorical denial that either of

17  these private investigators had ever been engaged by Wynn

18  nor were they acting on behalf of the Wynn organization in

19  conjunction with receiving any information from the

20  Attorney General's Office.  Well, Your Honor, we have been

21  gradually receiving information.  Two of the affidavits

22  that we've submitted to the Court in connection with our

23  reply memorandum are from two former Massachusetts state

24  police officers who are themselves currently private

25  investigators who had conversations about this apparently

7

1  improper access to the secured area of the Attorney

2  General's Office from currently active Mass State

3  troopers.  Those affidavits are submitted in connection

4  with our reply memorandum and they identify other officers

5  who are identified anonymously, not by name.  Well, we

6  subpoenaed two of the three officers who are described in

7  those affidavits and those witnesses were to be, we

8  intended to present testimony from them this afternoon

9  and, Your Honor, respectfully, at the conclusion of

10  today's hearing we would like to request that the Court

11  establish an evidentiary hearing because we believe the

12  evidence from those witnesses together with another

13  witness who we just learned the identity of last evening

14  will be critical for the Court to adjudicate this motion.

15  But the two witnesses who were subpoenaed were Sean Murray

16  and Nunzio Orlando.  Both of whom are currently

17  Massachusetts state troopers, and what we understand that

18  those troopers will testify to is the fact that the

19  secured area where these two private investigators who we

20  submit were working for Wynn Resorts LLC was an area that

21  is absolutely off limits to the public.  It's an area that

22  contains highly sensitive intercepted communications,

23  grand jury materials and other confidential information

24  collected in connection with ongoing criminal

25  investigations.  One of the documents which we've attached

1   to the binder which we submitted to the Court is the

2   state police general order concerning criminal

3   intelligence at Tab 9 and what it provides, Your Honor, is

4   that any information collected in the course of an ongoing

5   state police investigation is only to be provided to

6   personnel employed by the Massachusetts state Police on a

7   need-to-know basis.  And so we submit that any access to

8   this area of the fourth floor of the Attorney General's

9   Office at One Ashburton Place was highly improper and we

10  expect that Troopers Murray and Orlando would testify to

11  the fact, to that fact.

12          Now more importantly, Your Honor, we understand

13  that Trooper Orlando will testify to the fact that when he

14  learned about these two private investigators getting

15  access to the fourth floor secured area that he spoke to a

16  person who is a long term confidant of his, a person who

17  is the head of the Massachusetts Gaming Division at the

18  Attorney General's Office, Patrick Hanley, and he talked

19  to him about the fact that he was distressed to learn that

20  these two private investigators had been granted access to

21  the fourth floor area and he said that his friend Mr.

22  Hanley, told him that he was aware of it, that he was

23  distressed by it and that he said, "I have to work for

24  these people" and hung up the phone.  In the course of

25  that conversation between Assistant Attorney General

1   Hanley and Trooper Orlando, were informed that he said

2   that he was aware of the fact that these two investigators

3   were given access to the fourth floor area and that they

4   were there on behalf of Wynn.   Now if that's true, Your

5   Honor, that directly refutes the affidavits that have been

6   submitted by investigators Flaherty and Matthews and it

7   raises very serious questions about the integrity of the

8   Massachusetts state police investigation which was for all

9   intents and purposes a joint investigation being conducted

10  by the Attorney General's Office and the U.S. Attorney's

11  Office and in that regard, Your Honor, I will note that

12  David Rubin an Assistant Attorney General was cross

13  designated as a Special Assistant U.S. Attorney and was

14  present for much of the grand jury proceedings in

15  connection with this case, and much of the discovery that

16  we've obtained from the U.S. Attorney's Office relates to

17  investigative work done by the Massachusetts state police.

18  So the fact that private investigators would be granted

19  access to a highly secure area where there's information

20  about ongoing criminal investigations, raises very serious

21  questions about the possible involvement of an alleged

22  victim in this case in the government's ongoing

23  investigation.

24        Now I note that the government's opposition to

25  our motion essentially boils down to two points.   One, it

10

1   didn't happen and secondly if it happened, it doesn't

2   relate to any information that's relevant in this case.

3   Well Your Honor, whether or not it happened is up in the

4   air at this point because we've got conflicting stories

5   from current and former law enforcement people, those who

6   are allegedly involved denying it, those who are outside

7   observers and have no stake in this process claiming that

8   the individuals were there and allegedly that an assistant

9   attorney general acknowledged that they were present in

10  that secure area working on behalf of Wynn.  The third

11  trooper who I mentioned earlier is the one who we only

12  recently learned the identity of last evening is a trooper

13  by the name of Mark Walsh and we are informed that he

14  informed former Trooper, Your Honor, may I have a moment?

15  I want to make sure that I get my facts correct to the

16  Court.

17            THE COURT:  Take your time.

18            MR. CONNOLLY:  Yes, it's former, it's current

19  Trooper Mark Walsh who informed former Trooper John Walsh.

20  I understand the two are unrelated.  That in fact he too

21  was aware that these two investigators had been granted

22  access to the fourth floor area and that they were there

23  on behalf of Wynn.  So, Your Honor, at this point we've

24  got accounts that are directly contradictory to one

25  another but for the accounts that we're receiving from

1  people who are not involved are that in fact this did

2  occur and as I said it raises very serious questions.

3       Now the government has argued this information

4  even if it's true, it's not relevant because the

5  government hasn't contended that there was any effort to

6  conceal Mr. Lightbody's ownership interest prior to

7  December of 2012, the point in time when the option

8  agreement was entered into.  Your Honor, we submit that

9  this information is highly relevant to the defense of this

10  case regardless of what time these events occurred or what

11  time there was this collaboration between investigators

12  working for the Wynn organization and this joint state and

13  federal investigation, and by that I mean before the

14  option agreement it's critically important to know what

15  the Wynn organization knew because if it had any concerns

16  about the fact that there may be an individual with a

17  felony record who was a partner in this FBT partnership,

18  it had the obvious obligation and interest to conduct some

19  type of an inquiry or an investigation into what this

20  person's criminal background was, what his ownership

21  interests were and what was his role to be at the time

22  Wynn was entering into the option agreement, and I submit

23  to the Court that discovery has shown that there was no

24  inquiry undertaken by the Wynn organization whatsoever to

25  verify whether or not Mr. Lightbody had an ownership

12

1  interest in FBT.  Not only that, Your Honor, the

2  evidence shows that an employee of the manager of FBT,

3  Michael Flood, testified before the grand jury that he met

4  with two representatives of the Wynn organization in

5  November of 2012, and informed them that the partnership

6  did have a member who was, who had a checkered past but

7  that the partnership was in the process of getting him out

8  of the organization.  Now what the Wynn organization, what

9  value it placed on that information is critical, Your

10  Honor, because as I said at the beginning, this case is

11  only a viable prosecutable case if the defendants made

12  material misrepresentations to the alleged victim, the

13  Wynn organization.  If the Wynn organization didn't care

14  and we submit there are lots of legal reasons why it

15  wouldn't care that there was a felon who was a partner in

16  FBT, that goes to the very heart of a defense that we

17  intend to assert at trial, and so any evidence about

18  Wynn's knowledge of Lightbody's role in FBT before the

19  option agreement is highly relevant and potentially

20  exculpatory to the defense in this case.  But even if

21  there's no information that this collaboration predated

22  the date of the option agreement, which is specifically

23  December 19, 2012, subsequent collaboration between the

24  Wynn organization and this joint investigation is highly

25  relevant too.  The reason for that, Your Honor, is that

13

1  Wynn had every reason to support this criminal

2  investigation where it's an alleged victim for fear that

3  if the Wynn organization were found to have knowingly

4  tolerated the presence of a felon who was a partner in the

5  FBT organization at the time that this option agreement

6  was entered into, it might perceive a risk that it could

7  lose its license to this gaming operation.

8         The second reason why it's highly important,

9  Your Honor, is there were critical witnesses from the Wynn

10 organization and from NL Strategies who testified before

11 the grand jury after even the date where the government

12 concedes these two investigators were given access to the

13 fourth floor area, and so any information that was

14 provided by the Attorney General's Office to the

15 investigators for Wynn when those investigators then had

16 an opportunity to work with witnesses from ML Strategies,

17 one of whom is a key witness in this case by the name of

18 Stephen Taco, the president of ML Strategies, we're

19 entitled to that information.  We're entitled to know what

20 was provided by the government to the Wynn organization in

21 order to prepare these witnesses to testify in this case.

22 So whenever this collaboration occurred, I respectfully

23 submit to the Court it's highly relevant that we

24 understand it, we understand what information was provided

25 by the investigation to the Wynn organization and what

14

1   information was provided by the Wynn organization to the

2   joint federal and state investigation.

3           So, Your Honor, at this point we don't know

4   exactly what happened.  What we know is there are

5   numerous, highly credible sources who have claimed that

6   these two investigators of the Wynn organization were

7   allowed into the secured facility in the midst of this

8   criminal investigation.  Remember the indictments, Your

9   Honor, were not returned until October of 2014, so even

10  the date that is acknowledged for these investigators to

11  be present raises very serious questions.

12          THE COURT:  All right.  Do other defense counsel

13  want to be heard on the motion?

14          MR. LEVY:  No, Your Honor, nothing to add to Mr.

15  Connolly.

16          THE COURT:  Mr. Rankin?

17          MR. RANKIN:  I join in Mr. Connolly's argument,

18  Your Honor.

19          THE COURT:  All right, Ms. Barclay, then I'll

20  hear your response, and I do note for the record that

21  Docket Entry 182 which was the motion to file a reply, is

22  allowed as a housekeeping matter.

23          MR. CONNOLLY:  Thank you, Your Honor.

24          THE COURT:  Your welcome.

25          MS. BARCLAY:  Thank you, Your Honor.  First of

15

1  all, I think that from Mr. Connolly's argument it seems

2  to be undisputed at this point that Matthews and Flaherty

3  were reviewing files at the AG's office in March of 2014,

4  okay.  So at that point everyone who read the Globe or the

5  Herald knew that Lightbody had concealed, that these

6  defendants had concealed Lightbody's interest in the

7  property from Wynn and Wynn had known of the attempt to

8  conceal Lightbody's interest since the end of July 2013.

9  So attempts to sort of blur the timeline here just to take

10 a step back, it is relevant to consideration of what is

11 material and exculpatory in this case.  Your Honor,

12 there's no evidence that there was any unauthorized

13 disclosure of investigative materials related to this

14 case.  To support the allegations that Joseph Flaherty and

15 Stephen Matthews had access to investigative files, the

16 defense first submitted some deposition subpoenas.  Those

17 subpoenas ask questions, they don't provide any

18 information.  They don't provide facts.  Moreover, the

19 defendants failed to disclose in their briefs before the

20 Court that one of the individuals, Mr. Flaherty had

21 actually told defense counsel that these allegations were

22 false, but that's not disclosed in either the opening

23 brief or notably in the reply brief that was filed last

24 night or this morning.  They don't deny it and they don't

25 explain it.  While these allegations are facially without

1  merit, out of an abundance of caution, the government

2  interviewed Mr. Flaherty and Mr. Matthews, as set forth in

3  their affidavits which we filed with our opposition which

4  are the only evidence before this Court that is based on

5  personal knowledge by percipient witnesses.  This incident

6  never happened.  They were at the Attorney General's

7  Office on two dates in March of 2014.  They were reviewing

8  files on an unrelated matter.  They did not have access to

9  the investigative files related to this criminal case and

10  Matthews for one never even worked for Wynn or Mintz Levin

11  or ML Strategies.  There are no unanswered questions that

12  are relevant to this criminal case against Dustin

13  DeNunzio, Anthony Gattineri and Charles Lightbody.

14          Just a brief note about the two affidavits that

15  were submitted with the reply brief last night, this

16  morning, neither individual, although the defendants in

17  their brief state that they have personal knowledge,

18  neither individual actually claims to have personal

19  knowledge of this incident.  If you read those affidavits

20  carefully as I'm sure the Court will, Gregory Foley says

21  he was told by an unknown individual that Mass State

22  Police Trooper Sean Murray saw Flaherty and Matthews at a

23  table in a conference room near the wiretap room and that

24  they were unattended.  It's hearsay.  There are no names,

25  no dates, no evidence, not even a hearsay statement that

1   Flaherty and Matthews reviewed files related to this

2   case.  That's not included in the Foley affidavit.  That's

3   not what it says.  Moreover, as Foley admits in his

4   affidavit, he worked for Suffolk Downs.  That's a

5   competitor of Wynn.  With regard to the Walsh affidavit,

6   Walsh says he was told again by an unknown individual that

7   Murray saw Matthews and Flaherty reviewing some files in

8   the wiretap room in the fall of 2013.  Now we know that

9   that's not true.  It was in March of 2014.  He was told by

10  one Mass state police officer that he was told by another

11  Mass state police officer that Flaherty and Matthews were

12  working for Wynn.  He was told by one of the unknown,

13  unnamed, Mass state police officers that he had a

14  conversation with Assistant Attorney General Pat Hanley.

15  There's no names, no dates, no evidence, not even hearsay

16  evidence in the Walsh affidavit, that Flaherty and

17  Matthews reviewed files related to this case.

18          The defendant's request, Your Honor, is based

19  purely on hearsay and rumor and the individuals alleged to

20  have been directly involved in this incident have denied

21  under oath that it happened.  The Court should decline the

22  defendants request to conduct a fishing expedition into an

23  allegation that appears to have as its root, a game of

24  telephone between current and former Mass state police

25  officers.

18

1          And just a note with regard to Mr. Lightbody's

2    historic interest in the property, the government's

3    position is that it can't be exculpatory that the

4    defendants may have told Wynn that Lightbody had an

5    interest but was out or was getting out.  The theory put

6    forth in the reply brief and expressed by Mr. Connolly is

7    incongruous.  Dustin DeNunzio sent an email to Wynn

8    representatives in January of 2013 saying the only owners

9    of this property, the only equity owners of this property

10   are me, Anthony Gattineri and Paul Lunez (ph).  The

11   defendants say that that email was true.  The government

12   says that that email is false.  Yet the defendants

13   basically argued that DeNunzio's representation was

14   obviously false and that Wynn should have done more to

15   investigate whether Lightbody had an interest in the

16   property.  They can't have it both ways and under no

17   stretch of the imagination is Wynn's knowledge of

18   Lightbody's historic ownership interest, material or

19   exculpatory to the facts in the indictment in this

20   particular criminal case.  Regardless, the government has

21   given the defendants the evidence that it has related to

22   this issue.  We turned over grand jury transcripts.  They

23   cited them in their briefs.  We'll produce the interview

24   reports when we're required to do that.  Nothing more is

25   required.

1            I just want to note, Your Honor, the

2    defendants mentioned that one of their witnesses who would

3    testify about this is a trooper named Nunzio Orlando, and

4    I'd note that there's no affidavit from him submitted by

5    the defendants.  I'd also note that the government is not

6    aware of how Trooper Orlando would have any personal

7    knowledge of any of the alleged facts in this case.  No

8    one has said that he was anywhere near this alleged

9    incident when it happened.  I'd also point out to Your

10   Honor, that this is the same Mass state police trooper who

11   sent an anonymous letter to the U.S. Attorney's Office

12   accusing his superior of protecting a witness in the

13   Whitey Bulger case, and that turned out to be

14   unsubstantiated, just like these allegations are

15   unsubstantiated.

16           Your Honor, the government would request that

17   you deny their request for an evidentiary hearing and deny

18   the motion.

19           THE COURT:  Mr. Connolly, I'll give you a moment

20   just to reply if you wish.

21           MR. CONNOLLY:  Thanks, Your Honor.  The

22   Assistant U.S. Attorney faults us for not having gotten

23   affidavits from the troopers who were referred to in Mr.

24   Walsh's affidavit.  Your Honor, we didn't get the names of

25   those troopers until last week when we issued or we asked

1  the Court to issue subpoenas to have them come and

2  testify today.  We couldn't get access to these

3  individuals as they are active duty troopers working for

4  the Massachusetts state police so, it's not as though we

5  can call them up, sit them down and have them draft

6  affidavits for us, and as to the Trooper Mark Walsh, I

7  only learned of his identity last night at about 5:00 PM,

8  and he's the officer B in the other, in the Walsh

9  affidavit who is reported to have said to his former

10  colleague that these investigators were in the secured

11  area working on behalf of Wynn.  So, Your Honor, I haven't

12  had the opportunity to get sworn statements from these

13  individuals.  Moreover, Mr. Orlando, if Assistant U.S.

14  Attorney Barclay wants to challenge his credibility she's

15  free to do so, but this is an active duty law enforcement

16  officer in the Commonwealth who is I understand prepared

17  to come into this courtroom and testify that he had a

18  conversation with Patrick Hanley, the assistant attorney

19  general who's responsible for the Gaming Division at the

20  AG's office and that Mr. Hanley told him that yes,

21  Flaherty and Matthews were in the fourth floor conference

22  room area by the wire tap room, he knew it, he saw them

23  there and that they were there on behalf of Wynn.  Now,

24  Your Honor, if that's true that shows a collaboration

25  between an alleged victim, which by the way has literally

1   billions of dollars at stake in making sure that it is

2   not found to have been complicit in concealing the

3   identify of an alleged felon, and I would also point out,

4   Your Honor, that Wynn had a further incentive to support

5   the government's investigation of these individuals about

6   concealing Mr. Lightbody because in the midst of that

7   investigation, the Gaming Commission agreed with the Wynn

8   organization that whatever sins may be involved with Mr.

9   Lighbody's alleged interest in this partnership would be

10  cured by virtue of lowering the purchase price from 75

11  million to 35 million, a $40 million windfall which the

12  Wynn organization would not have been entitled to if it

13  was aware that Mr. Lightbody had an ownership interest in

14  FBT.  There's all kinds of reasons that would incentivize

15  the Wynn organization to work with the AG's office, the

16  joint federal and state criminal investigation, to

17  establish and make sure that its witnesses establish that

18  yes indeed it was the victim of this fraud and that these

19  individuals who are charged here should be found to be

20  guilty.  We need to understand any collaborative efforts

21  that occurred along those lines, and I submit, we need to

22  get the people involved under oath in this courtroom to

23  test the voracity of what they have to say.

24          THE COURT:  Well, I'll further review

25  everything.  I didn't receive the affidavits until this

22

1   morning because I didn't have access last night and I'll

2   take the matter under advisement given--

3           MR. LEVY:  Can I make one comment, Your Honor,

4   please.  Sorry to interrupt you, the Court.  I just, if I

5   may have misunderstood AUSA Barclay, but there was a

6   comment there about the June, excuse me, the January 17th

7   email that we conceded was false and nothing could be

8   further from the truth.  We absolutely do not concede.

9   That email was accurate and so just if the Court's

10  considering that comment in the context of this very

11  important motion, I want to be clear that we absolutely do

12  not agree with that characterization that the email was

13  false.

14          THE COURT:  All right.  So noted.

15          MR. CONNOLLY:  Your Honor, one more thing if I

16  might.  This will just take a second.  Attached to as

17  Exhibit 8 to the binder we submitted to the Court is a

18  PowerPoint presentation that the Wynn organization

19  submitted to I believe the IEB in connection with the

20  suitability review--

21          THE COURT:  You believe or you know?

22          MR. CONNOLLY:  Well, we received this from a

23  third party, Your Honor, and my understanding is that this

24  was submitted to the Gaming Commission in connection with

25  its application.  In any event, it's a Wynn organization

23

1   PowerPoint on its global compliance program where on the

2   third page it touts the fact that it conducts intensive

3   background checks into criminal records, property

4   ownership and that it has access to local intelligence

5   including confidential sources including law enforcement.

6   So the fact that it would have access to people who could

7   get inside information from law enforcement is something

8   that the Wynn organization touted in connection with its

9   pursuit of a license in the Commonwealth.

10          Thank you.

11          THE COURT:  Ms. Barclay, do you want to respond

12  to that?

13          MS. BARCLAY:  Your Honor, I just, believing and

14  knowing are two different things and I think--

15          THE COURT:  The Court knows that distinction.

16          MS. BARCLAY:  I understand, Your Honor, and I

17  think that everything that has come out here today,

18  everything in the defendant's briefs is a belief.  It's

19  not based on knowledge of anyone who actually was involved

20  in this, or who allegedly was involved in an incident and

21  the people who were allegedly involved have said it didn't

22  happen and that should be the end of the story with regard

23  to this motion.

24          THE COURT:  All right, it's under advisement.

25  We stand in recess.

24

1          MR. CONNOLLY:  Thank you, Your Honor.

2          THE COURT:  You're welcome.

3  (Court adjourned)

4  (3:46:43 PM)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

25

CERTIFICATION

1

2      I, Maryann V. Young, court approved transcriber,

3  certify that the foregoing is a correct transcript from

4  the official digital sound recording of the proceedings in

5  the above-entitled matter.

6

7  /s/ Maryann V. Young                July 31, 2015

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25