UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>(1) DUSTIN J. DENUNZIO,<br>(2) ANTHONY GATTINERI, and<br>(3) CHARLES A. LIGHTBODY,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Criminal No: 14-CR-10284-NMG<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT ANTHONY GATTINERI'S MEMORANDUM OF
LAW IN SUPPORT OF HIS RULE 29(a)
<u>MOTION FOR JUDGMENT OF ACQUITTAL</u>**

Defendant Anthony Gattineri ("Mr. Gattineri") respectfully submits this memorandum of law in support of his Motion for Judgment of Acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure. On April 26, 2016, the Government concluded the presentation of its case-in-chief. As explained in detail below, the evidence adduced by the Government was insufficient as a matter of law to sustain convictions against Mr. Gattineri on the two counts asserted against him in the Indictment, namely Count One, conspiracy to commit wire fraud in violation of 18 U.S.C. § 371, and Count Two, wire fraud in violation 18 U.S.C. § 1343.

Each count is based on two distinct predicates: (1) that the Defendants, including Mr. Gattineri, concealed material information regarding Charles Lightbody (specifically, the fact that Mr. Lightbody is a convicted felon and purportedly has ties to La Cosa Nostra) from Wynn Resorts Limited ("Wynn"); and (2) that the Defendants concealed this same material information regarding Mr. Lightbody from the Massachusetts Gaming Commission. The evidence offered by

the Government during its case in chief was insufficient to establish beyond a reasonable doubt that Mr. Gattineri knowingly, willfully and with specific intent to defraud, committed wire fraud and/or conspired to defraud Wynn or the Massachusetts Gaming Commission by concealing such information.

In addition, the evidence at trial has undisputedly established that the Massachusetts Expanded Gaming Act, M.G.L. c. 23K, § 1, et al., does not prohibit a person with a criminal background from selling land to a casino operator. The act of allegedly concealing Mr. Lightbody's ownership interest in FBT Everett Realty, LLC ("FBT") from Wynn and/or the Massachusetts Gaming Commission would not give rise to wire fraud or conspiracy to commit wire fraud liability because the concealment of such information, even if true, would not have been material either to Wynn or the Gaming Commission. Accordingly, judgment for acquittal should enter in Mr. Gattineri's favor.[1]

## ARGUMENT

### A. THE RULE 29 STANDARD

Pursuant to Fed. R. Crim. P. 29(a), "the court on motion of a defendant or its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses." Fed. R. Crim. P. 29(a). When faced with a Rule 29(a) motion, the Court must determine whether "a rational factfinder could find, beyond a reasonable doubt, that the prosecution successfully proved the essential elements of the crime." United States v. Gaw, No. 14-2242, 2016 WL 891144, at *2 (1st Cir. Mar. 9, 2016). In making this determination, the court must view "the evidence as a whole taken in the light most favorable to

---

[1] Mr. Gattineri further incorporates by reference, to the extent applicable, the arguments raised by Defendants Dustin J. DeNunzio and Charles A. Lightbody in their respective Rule 29(a) motions for the entry of judgments of acquittal.

2

the Government, together with all legitimate inferences to be drawn therefrom to determine whether a rational trier of fact could have found guilt beyond a reasonable doubt." United States v. Smith, 680 F.2d 255, 259 (1st Cir. 1982). The court must also reject evidentiary interpretations that are "unreasonable, insupportable, or overly speculative." U.S. v. Ofray-Campos, 534 F.3d 1, 31-32 (1st Cir. 2008).

In considering a Rule 29(a) motion, the court may also take note of what the government's evidence failed to establish. See United States v. Thai, 29 F.3d 785 (2d Cir. 1994). Moreover, where the evidence provides nearly equal support for a theory of innocence as for a theory of guilt, acquittal is warranted because "a reasonable jury must necessarily entertain a reasonable doubt." See United States v. Andujar, 49 F.3d 16, 20 (1st Cir. 1995).

When these standards are applied to the evidence adduced by the Government in this case, it becomes clear that judgment of acquittal should enter in Mr. Gattineri's favor on Counts One and Two of the Indictment.

### B. THE CONSPIRACY AND WIRE FRAUD CHARGES

Mr. Gattineri, as well as Defendants Lightbody and Dustin DeNunzio ("Mr. DeNunzio"), are charged with conspiracy to commit wire fraud (Count One) and wire fraud (Count Two). The federal wire fraud statute is implicated where a person, knowingly and willfully, has "devised . . . any scheme or artifice to defraud" or to "obtain money or property by means of false or fraudulent . . . representations." 18 U.S.C. § 1343. In order to prove wire fraud, the Government must establish beyond a reasonable doubt that: (1) Mr. Gattineri participated in a scheme or artifice to defraud; (2) Mr. Gattineri participated knowingly, willfully and with specific intent to defraud; and (3) Mr. Gattineri used the wires in furtherance of the scheme. See United States v. Woodward, 149 F.3d 46, 54 (1st Cir. 1998) (emphasis added). With respect to

the second prong, the Government must prove that Mr. Gattineri possessed actual fraudulent intent. United States v. Starr, 816 F.2d 94, 98 (2d Cir. 1987). Also, materiality is an important element of the wire fraud charge. United States v. Blastos, 258 F.3d 25, 27 (1st Cir. N.H. 2001). To establish materiality, the Government must prove that the statement in question "has a natural tendency to influence, or [is] capable of influencing, the decision of the decision making body to which it was addressed." United States. v. Appolon, 715 F.3d 362, 368 (1st Cir. 2013). Materiality is assessed using an objective standard: the question is what "a reasonable person would consider important in deciding what to do." United States v. Tum, 707 F.3d 68, 72 (1st Cir. 2013) (quoting Neder v. United States, 527 U.S. 1, 16, 20 (1999)).

With respect to the conspiracy charge, the Government must prove the following "three essential elements: (1) an agreement among two or more persons, the object of which is an offense against the United States; (2) the defendant's knowing and willful joinder in that conspiracy; and (3) commission of an overt act in furtherance of the conspiracy by at least one of the alleged co-conspirators." United States v. Svobosa, 347 F.3d 471, 476 (2d Cir. 2003). Stated differently, and tailored to the allegations made by the Government in this case, the Defendants must have knowingly agreed to commit wire fraud, with the requisite specific intent, and committed an overt act in furtherance of the alleged wire fraud.

Both the wire fraud and conspiracy charges are premised on the theory that the Defendants "concealed" from Wynn the fact that Mr. Lightbody "retained a financial interest in the Everett Parcel" and/or "in FBT" -- in order to "obtain" money from Wynn for the sale of the Everett Parcel. See Indictment, ¶¶ 15-17, 19. The Government contends that the Defendants sought to conceal this purported interest because of two separate and distinct facts concerning Mr. Lightbody's history: (1) Mr. Lightbody's criminal background; and (2) Mr. Lightbody's

alleged status as a "known associate" of La Cosa Nostra.  Hence, it is critical to the Government's claim that it prove that Mr. Gattineri had the requisite knowing, willful and specific intent to defraud Wynn and the Massachusetts Gaming Commission in purportedly concealing these two alleged facts and that these two facts were "material."  As explained below, judgment for acquittal should enter in Mr. Gattineri's favor because the Government adduced insufficient evidence to establish a scheme to defraud based on either Mr. Lightbody's (1) criminal background; or (2) alleged connections to organized crime and that Mr. Gattineri possessed the requisite knowing, willful and specific intent to defraud.  And, these alleged facts would not have been "material" in any event.

      **C.    THE GOVERNMENT'S FAILURE TO INTRODUCE EVIDENCE THAT MR. GATTINERI USED THE WIRES TO FURTHER A SCHEME TO DEFRAUD IS FATAL TO ITS WIRE FRAUD COUNT**

In order to convict a defendant of wire fraud, the government must prove that the defendant caused a "wire transmission in furtherance of the fraudulent scheme."  See United States v. Ratliff–White, 493 F.3d 812, 817 (7th Cir.2007).  The "government is entitled to prove this element either by showing that the defendant himself personally performed the wire transfer or (more commonly) that he acted with knowledge that the use of a wire would follow in the ordinary course of business or that such use could reasonably be foreseen."  United States v. Adcock, 534 F.3d 635, 640 (7th Cir. 2008).  Here, the Government wholly failed to introduce any evidence whatsoever that Mr. Gattineri either performed a wire transfer or knew about, or reasonably could have foreseen, the use of a wire transfer.  This omission is fatal to Count Two of the Indictment.

Here, the only predicate wire transmission relied upon by the Government is a January 17, 2013 email from Mr. DeNunzio to Kim Sinatra, Wynn's General Counsel.[2] In his email, which is titled "Equity Holders in FBT – Everett, MA," Mr. DeNunzio identified himself, Mr. Gattineri, and an individual named Paul Lohnes as the only individuals holding an ownership interest in FBT. The Government has taken the position that Mr. DeNunzio's e-mail, which does not identify Mr. Lightbody as an owner of FBT, constituted the use of wires to further a scheme to defraud. See Indictment, ¶ 30. Mr. Gattineri was not copied on Mr. DeNunzio's e-mail, and the Government did not introduce any evidence at trial that indicates or suggests in any way that Mr. Gattineri ever received a copy of, had any knowledge of or could have otherwise reasonably foreseen Mr. DeNunzio's e-mail. Hence, the Government has failed to introduce any evidence to support its contention that Mr. Gattineri participated in, or was aware of, the predicate act of wire fraud. Given the complete lack of evidence against Mr. Gattineri on Count Two of the Indictment, Mr. Gattineri is entitled to an acquittal on that count.

### D.   THERE IS NO EVIDENCE OF A HIDDEN FINANCIAL INTEREST

The Government's entire case is predicated on the existence of Mr. Lightbody's purported hidden "financial interest in the Everett Parcel" and/or "in FBT." See Indictment, ¶¶ 15-17, 19. However, despite conducting countless interviews; issuing dozens of subpoenas to banks, telephone companies, and email servicers; conducting extensive surveillance of Mr. Lightbody and others; monitoring the phone calls of Mr. Lightbody and others; and employing the skills of a team of approximately 20 FBI agents, together with officers from the

---

[2] There was no evidence to suggest that Mr. Gattineri himself made any statement to Wynn concerning the ownership of FBT. The evidence is undisputed that Mr. Gattineri has never even spoken to or communicated with Ms. Sinatra in any fashion. See Trial Tr., Vol. 5, 127:24-129:9. In fact, there is no evidence that Mr. Gattineri made any statement concerning any subject to any representative of Wynn at any time. Rather, Count 2 of the indictment is predicated, in its entirety, on the e-mail communication from Mr. DeNunzio.

Massachusetts State Police and the Massachusetts Department of Corrections for over a period of nearly three years, the Government has been unable to produce a single shred of evidence that indicates in any way that Mr. Lightbody holds any financial interest in the Everett Parcel and/or FBT.  For example, there was no evidence introduced during the Government's case in chief of any cash payments made to Mr. Lightbody, any written side agreements to benefit Mr. Lightbody, and/or any stock, bond, or asset transactions being done to benefit Mr. Lightbody.  In fact, during his examination, Special Agent Kevin Sheahan, who has been involved in the investigation for a period of approximately three years, was unable to identify a single document in which Mr. Gattineri acknowledged that the note between Mr. Lightbody and him was anything other than a legitimate business transaction.  See Trial Tr., Vol. 10, 135:5-137:12.  Given the complete dearth of evidence that Mr. Lightbody held any type of hidden ownership interest in the Everett Parcel and/or FBT, Mr. Gattineri is entitled to a judgment of acquittal on both counts in the Indictment.

   **E. THERE IS NO VIABLE SCHEME TO DEFRAUD BASED ON MR. GATTINERI'S ALLEGED CONCEALMENT OF MR. LIGHTBODY'S CRIMINAL BACKGROUND**

The Government also failed to present sufficient evidence to sustain a conviction on a scheme to defraud based on Mr. Gattineri's alleged concealment of Mr. Lightbody's criminal record.  To the contrary, the evidence at trial during the Government's case has demonstrated that Mr. Lightbody's criminal background was disclosed to Wynn and became immaterial to Wynn's decision-making process.  Moreover, since the Massachusetts Expanded Gaming Act does not preclude an individual with a criminal background from selling land to a casino

7

operator, the allegedly "concealed" information about Mr. Lightbody's "hidden" ownership interest could not have been material to either Wynn or the Gaming Commission in any event.[3]

The Prosecution's own witnesses testified about Wynn's knowledge of Mr. Lightbody's criminal background.  For example, James Michael Flood, who was present at the first meeting between FBT and Wynn representatives, testified that in November 2012, Mr. DeNunzio informed two high-ranking Wynn representatives -- Kim Sinatra, Wynn's General Counsel, and Matt Maddox, Wynn's Chief Financial Officer and Treasurer -- that an "individual with a checkered past" was an owner of FBT, but was in the process of getting out of the partnership. See Trial Tr. Vol. 6, 211:10-212:8.  As such, high-ranking Wynn representatives were fully aware of Mr. Lightbody's past as of November 2012.

Moreover, there is nothing in the record suggesting that the identity of FBT's owners was in any way material to Wynn in its decision-making process.  In fact, Wynn proceeded with the property transaction despite Mr. DeNunzio's disclosure to Wynn of Mr. Lightbody's ownership interest and "checkered past," by signing the option agreement with FBT in December 2012 without conducting further inquiry to determine whether, at the time of signing, Mr. Lightbody still held an ownership interest in FBT.  In fact, Wynn's own attorney, Dan Gaquin, testified that, prior to the signing of the option agreement, he did not ask FBT's attorney or anyone from FBT for the names of FBT's owners.  See Trial Tr., Vol. 4, 44:5-45:1, 57:8-57:10.

Further, an examination of the Act confirms why this information would not have been "material" to both Wynn and the Massachusetts Gaming Commission.  The Act does not make the seller's identity a material consideration in an application for a gaming license.  In fact, the statute imposes no requirements on sellers, as numerous witnesses have testified.  M.G.L. c.

---

[3] It is also noteworthy that Mr. Lightbody's criminal background is relatively benign, with his most recent convictions resulting in either probation or a small fine.

23K, § 1, et al.; see, e.g., Trial Tr., Vol. 3, 199:6-10 (nothing in the Gaming Act prohibits someone with a criminal conviction from receiving the proceeds of a sale to a casino company). Rather, suitability inquiries look at the applicant (i.e., the buyer), in this case Wynn. See Trial Tr., Vol. 3, 188:17-24. Like the statute, the regulations mention no suitability requirements for sellers. See Trial Tr., Vol. 3, 199:6-10; see also Trial Tr., Vol. 4, 104:23-105:5. As such, a reasonable person standing in Wynn's shoes would not have considered this information "material" as it would not have impacted the decision-making process to purchase the parcel for casino purposes.

Notably, certain government witnesses admitted that the conduct for which Mr. Gattineri has been charged does not violate the Act. For example, Ms. Gayle Cameron – a Commissioner on the Massachusetts Gaming Commission, which is the body responsible for the promulgation and oversight of the Act and its accompanying regulations, admitted that neither the Act nor any gaming regulation provides notice that the conduct in which Mr. Gattineri allegedly participated would be problematic. The relevant questioning of Ms. Cameron proceeded as follows:

> Q. And there's nothing in the statute that would tell me, if I'm a landowner and I have a criminal record in my past and I sell my land outright to a casino company, that's going to be a problem to the Gaming Commission? I can't find that in the statute, correct?
>
> A. Not in the statute.
>
> Q. How about in the regulations?
>
> A. Not in the regulations.

See Trial Tr. Vol. 4, 104:23-105:5.

Ms. Cameron was not the only Massachusetts Gaming Commission representative who so testified. Ms. Karen Wells, Director the Investigations and Enforcement Bureau, confirmed Ms. Cameron's understanding through testimony that proceeded as follows:

> Q. If you were to look at the Gaming Act, would you find a provision that says that, you know, someone who's been convicted of a crime in the past cannot benefit?
>
> A. You would not.
>
> Q. You would not. And you wouldn't find a law prohibiting someone with a criminal conviction in their past from receiving the proceeds of a land sale to a casino company?
>
> A. You would not.

See Trial Tr. Vol. 3, 199:1-199:10.

Simply put, the evidence was devoid of anything from which the jury could conclude that the information concerning whether Mr. Lightbody continued to hold an ownership interest in FBT was material to Wynn's decision to purchase the FBT parcel and/or to the Massachusetts Gaming Commission.[4] This presents a further ground for judgment of acquittal on both counts in the Indictment.

### F. THE EVIDENCE DOES NOT SUPPORT A SCHEME TO DEFRAUD BASED ON MR. GATTINERI'S ALLEGED CONCEALMENT OF MR. LIGHTBODY'S CONNECTIONS TO ORGANIZED CRIME

As noted above, to succeed on a charge of wire fraud, the government must demonstrate that the defendants acted willfully and with specific intent to defraud. United States v. Woodward, 149 F.3d at 54. "Willfully" means to act knowingly and purposely, with intent to do something the law forbids . . . with bad purposes either to disobey or to disregard the law." Id. To act willfully, the defendant must contemplate some "actual harm or injury" to the victim. See

---

[4] Moreover, under principles of fair notice, criminal laws must provide a "person of ordinary intelligence fair notice that his contemplated conduct is forbidden." United States v. Hussein, 351 F.3d 9, 13 (1st Cir. 2003) (quoting United States v. Harriss, 347 U.S. 612, 617 (1954)). This is predicated on the notion that "no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." Id. Indeed, it is acknowledged that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed, and thus acquittal is warranted. See Harriss, 347 U.S. at 617. Under similar principles, judgment for acquittal should also enter in Mr. Gattineri's favor because the Massachusetts Expanded Gaming Act fails to provide any notice that the violation alleged in the case would give rise to criminal conduct.

United States v. Starr, 816 F.2d 94, 98 (2d Cir. 1987).  As such, to succeed on a wire fraud count, the government must establish that the defendant believed he was committing a crime or violating the law at the time that he made use of the wires.  Woodward, 149 F.3d at 54.  Good faith is a complete defense to wire fraud, and the government bears the burden of proving a lack of good faith beyond a reasonable doubt.  Id.

As the Court previously acknowledged, "the Indictment alleges that defendants set out to conceal Mr. Lightbody's ownership interest in the Everett Parcel specifically because Mr. Lightbody had multiple prior convictions and connections with La Cosa Nostra."  See May 12, 2015 Order denying the Defendants' Motion to Sever (ECF No. 123), pp. 16.  At trial, the Government presented a number of witnesses to testify about their "knowledge" that Mr. Lightbody allegedly is associated with organized crime.  See Testimony of Lt. Kradolfer, James Stern and Lt. Kevin Condon.  Notably, however, not a single one of these witnesses offered any evidence or testimony whatsoever to suggest that Mr. Gattineri had any reason to know of Mr. Lightbody's alleged connections to organized crime.  Given the absence of evidence even remotely suggesting in any way that Mr. Gattineri had any reason to know of Mr. Lightbody's alleged connections to organized crime, the Government has wholly failed to set forth evidence from which the jury could conclude that Mr. Gattineri "knowingly" engaged in a scheme to conceal such a "fact."  Indeed, permitting the jury to convict Mr. Gattineri on a theory of guilt for which no evidence has been presented would constitute reversible error.  See United States v. Urciuoli, 513 F.3d 290, 295-297 (1st Cir. 2008) (awarding new trial where jury was instructed with multiple potential theories of conviction for fraud, one of which was not viable).

In short, the Government has not presented a scintilla of evidence to suggest that Mr. Gattineri concealed Mr. Lightbody's interest in FBT from Wynn and/or the Gaming Commission

because of Mr. Lightbody's alleged connections to organized crime.  In fact, there is a complete absence of evidence suggesting that Mr. Gattineri had any knowledge whatsoever of Mr. Lightbody's alleged connections to organized crime.  This is fatal to the Government's "scheme to defraud" theory premised on Mr. Gattineri's concealment of Mr. Lightbody's alleged connections to organized crime since Mr. Gattineri could not have acted "willfully" to conceal a fact about which he had no knowledge.

## CONCLUSION

WHEREFORE, Defendant Anthony Gattineri requests that this Court enter judgment of acquittal on Counts One and Two of the Indictment pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure.

Respectfully submitted,

/s/ Rhiannon Campbell_____
Michael J. Connolly (BBO #638611)
Laura B. Angelini (BBO #658647)
Rhiannon Campbell (BBO # 682193)
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
Phone: (617) 345-9000
Fax: (617) 345-9020
mconnolly@hinckleyallen.com
langelini@hinckleyallen.com
rcampbell@hinckleyallen.com
*Attorneys for Anthony Gattineri*

Dated: April 26, 2016

## CERTIFICATE OF SERVICE

      I Rhiannon A. Campbell, hereby certify that, on April 26, 2016, true and accurate copies of the foregoing were served on counsel for the Government.

                                                                /s/ *Rhiannon Campbell*

55702599 v3